UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE ANN SILVA, | No. 2:20-cv-02124-AC |
| Plaintiff, | |
| v. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disabled widow's insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will GRANT plaintiff's motion for summary judgment, DENY the Commissioner's cross-motion for summary judgment, and remand to the Commissioner for further proceedings.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). A disabled surviving spouse may be entitled to a deceased wage earner's DIB (widow's insurance benefits) if certain criteria are met. 42 U.S.C.A. § 402. SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

I. PROCEDURAL BACKGROUND

On April 20, 2017, plaintiff filed applications for Title II disability insurance benefits and disabled widow's benefits under the Social Security Act (Act). Administrative Record (AR) 205-211, 230-233.[2] Plaintiff also filed for Title XVI supplemental security income under the Act on September 20, 2017. AR 212-220. In all applications, she alleged disability beginning August 10, 2016, due to diabetes, neuropathy, and depression. AR 205, 212, 231, 252. The applications were disapproved initially and on reconsideration. AR 101-05, 109-13. Plaintiff requested a hearing before an administrative law judge (ALJ) that was held on December 2, 2019. AR 32-64. The hearing was conducted by ALJ Vadim Mozyrsky and plaintiff, her attorney Jeffrey Milam, and Vocational Expert Erin Hunt were present and testified. AR 32-64 (transcript).

On January 22, 2020, the ALJ issued a decision finding plaintiff was not disabled. AR 12-31. This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. AR 1-3. Plaintiff then commenced this action for judicial review on October 25, 2020. ECF No. 1; 42 U.S.C. §§ 405(g), 1383(c). The parties consented to the jurisdiction of the magistrate judge. ECF No. 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 19 (plaintiff's summary judgment motion), 24 (Commissioner's summary judgment motion), 25 (plaintiff's reply).

II. FACTUAL BACKGROUND

Plaintiff was born in 1968, and accordingly was 47 years old on the alleged disability onset date, making her a "younger person" under the regulations. AR 25, 249; see 20 C.F.R §§ 404.1563(c), 416.963(c) (same). Plaintiff has a high school education and can communicate in English. AR 251, 253. She previously worked as a cashier and a fast-food cook between the years 2013 and 2016. AR 254.

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[2] The AR is electronically filed at ECF No. 12-2 (AR 1 to AR 785).

2

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

////

3

2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.
>
> 2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.
>
> 3. The prescribed period ends on September 30, 2023.
>
> 4. [Step 1] The claimant has not engaged in substantial gainful activity since August 10, 2016, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.)
>
> 5. [Step 2] The claimant has the following severe impairments: diabetes mellitus, neuropathy, depression, social anxiety disorder, and cognitive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 6. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 7. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally lift/carry and push/pull 50 pounds, and frequently lift/carry and push/pull 25 pounds. She can sit for six hours in an eight-hour workday. She can stand/walk for a total of six hours in an eight-hour workday. She can occasionally climb ramps/stairs. She can never climb ladders and scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She should have no concentrated exposure to unprotected heights or moving mechanical parts. She should not operate a motor vehicle as part of her work duties. She is limited to simple, routine, and repetitive tasks. She is limited to simple work-related decisions. She can have occasional interaction with the public. She is limited to frequently bilateral handling and fingering.

8. [Step 4] The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

9. [Step 5] The claimant was born [in 1968] and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

10. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

12. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

13. The claimant has not been under a disability, as defined in the Social Security Act, from August 10, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 18-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 27.

## VI. ANALYSIS

At the outset of plaintiff's brief, she raises the following issues with the ALJ's decision: "1) Whether the ALJ's residual functional capacity finding was based on insubstantial evidence and free of legal error; 2) Whether the ALJ failed to give legally adequate reasons for rejecting the opinion of Dr. Lyon, the consultative examiner; 3) whether Plaintiff's case should be remanded for development of the record; and 4) whether the ALJ failed to give legally adequate reasons for rejecting Plaintiff's testimony." ECF No. 12 at 10. Plaintiff's first argument is not substantively addressed and is derivative of the remaining arguments. It is therefore not specifically addressed by the court.

////

A. <u>The Medical Evidence</u>

The ALJ considered the relevant medical opinions of (1) consultative examiner Cassandra Lyon, Psy.D. (2) State agency consultants Thomas Lauderman, D.O. and S. Hanna, M.D., and (4) State agency psychological consultants K. Econome, M.D. and Thomas Stern, Ph.D.  AR 19-23. Only the treatment of Dr. Lyon's opinion is addressed in the briefing.

      a. <u>The Consultation and Opinion of Dr. Lyon</u>

On July 17, 2017, psychologist Cassandra Lyon, Ph.D., saw plaintiff for a consultative examination. AR 520-527. She reviewed records, provided a complete psychological evaluation, and administered tests to assess intelligence, memory, and potential brain damage. AR 520. She noted that plaintiff reported experiencing psychiatric symptoms for roughly two years and that "[c]ompared to when the symptoms first began, the symptoms presently experienced are reportedly worse and more persistent." Id.

On initial mental status examination, plaintiff was alert and oriented; her speech was normal for tone, rate, and prosody (rhythm); her mood was euthymic (normal) and affect congruent; her attention, concentration, and fund of knowledge were fair; her memory for recently learned information was fair; her insight, judgment, and ability to abstract were adequate; her thought process was linear; and her thought content was normal. AR 522. Dr. Lyon performed Wechsler Adult Intelligence Scale-IV (WAIS-IV) IQ tests, which revealed a verbal comprehension index score of 78; a working memory index score of 77; a processing speed index score of 74; and a full-scale IQ score of 72; each score is classified as "borderline." AR 523. Memory testing revealed plaintiff's memory functioning was commensurate with her level of intellectual functioning. AR 525. Dr. Lyon also performed a "Trail Marking" test to measure general brain health and assess the presence of possible brain damage. Id. Plaintiff's results indicated her abilities fell below the 10th percentile, revealing notable difficulty with sustained attention and mental tracking. Id. The scores also revealed notable difficulty in maintaining consistent pace for both simple and complex work tasks. Id.

Dr. Lyon diagnosed plaintiff with a cognitive disorder. AR 525. She opined that plaintiff was moderately to markedly limited in her ability to understand, remember, and perform complex

7

written and oral instructions; maintain regular attendance in the workplace; perform work activities on a consistent basis; perform work activities without special or additional supervision; and complete a normal workday or workweek without interruption from her psychiatric condition. AR 526-527.

The ALJ rejected Dr. Lyon's opinions, providing five reasons. AR 24. The ALJ reasoned:

> First, several of the doctor's opinions are vague (e.g. moderate to marked limitations) and do not contain specific vocational limitations. Second, the severity of these opinions are inconsistent with the doctor's own findings. For example, Dr. Lyn found the claimant's fund of knowledge was fair; her memory was fair; and, her insight and judgment were adequate (3F, 3). Third, these opinions are inconsistent with the claimant's work history, which demonstrates that she has performed substantial gainful activity with her cognitive impairment (see, 2009-2011). Fourth, there is no evidence in the record that if the claimant properly managed her diabetes mellitus that she would not be able to maintain regular work attendance, perform work attendance on a consistent basis or need special/additional supervision. Accordingly, these opinions are not adopted into the residual functional capacity. Lastly, the medical evidence of record does not support the severity of her opinions.

AR 24. Dr. Lyon's opinion is the only medical opinion in the record from a psychologist or psychiatrist who examined plaintiff. ECF No. 19 at 11.

B. Principles Governing the ALJ's Consideration of Medical Opinion Evidence

Prior to 2017, the weight given to medical opinions depended in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996). The treating physician rule (hereafter "the TPR") provides that "those physicians with the most significant clinical relationship with the Plaintiff are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted). In 2017, new regulations promulgated by the Social Security Administration specifically eliminated the deference given to treating or examining physicians, providing that the

SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources" when evaluating claims filed after March 27, 2017.  20 C.F.R.  § 416.920c (titled "How we consider and articulate medical opinions and prior administrative findings for claims filed on or after March 27, 2017") (hereafter "new regulation").

Plaintiff argues that "[u]nder both the old and new regulations, more credence generally is given to the opinion of a medical source who has examined claimant than to the opinion of a medical source who performed only a paper review of a claimant's case." ECF No. 25 at 2-3. The undersigned has reviewed this argument in other cases and rejected it following a careful and detailed evaluation of the new regulations.  "The 2017 regulations do away with presumptively different weights for medical opinions depending on the relationship of the claimant to the evaluating doctor[.]"  Corpuz v. Saul, No. 2:19-CV-02401 AC, 2021 WL 795582, at *7 (E.D. Cal. Mar. 2, 2021).  The court is unpersuaded by plaintiff's argument that this conclusion is incorrect. The new regulations do, however, impose new articulation requirements for the ALJ: the ALJ is required to address a medical opinion's consistency and supportability within the context of the record. 20 C.F.R. § 404.1520c(b)(2) ("Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

C.   The ALJ Erred in Rejecting Dr. Lyon's Opinion

Even under the new regulations, affording no special weight to Dr. Lyon because of her examining physician status, the ALJ erred in rejecting Dr. Lyon's opinion because the ALJ's rationale is not supported by the record.  First, the ALJ's assertion that Dr. Lyon's assessed limitations are vague is not accurate; the limitations were couched within a document that provided specific testing results and analysis.  For example, Dr. Lyon interpreted plaintiff's test results and opined she had notable difficulties with sustained attention and mental tracking and with maintaining a consistent pace for simple work tasks.  AR 525.  Further, Dr. Lyon's assessed plaintiff's Delayed Memory Index as "Extremely Low" and placed her the 1st percentile, indicating plaintiff has very limited ability to remember both visually and orally presented

information after a brief delay. AR 524. Dr. Lyon used the Commissioner's own five-point scale for evaluating the effects of mental disorders—(1) No limitation, (2) Mild limitation, (3) Moderate limitation, (4) Marked limitation, and (5) Extreme limitation, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 (F) (2))—and supported her assessments. The whole of Dr. Lyon's report provided support and examples for the limitations assessed and is not vague.

The ALJ's second rationale, that Dr. Lyon's assessment was not consistent with her own findings, cherrypicked language from the report noting plaintiff's fund of knowledge was fair, her memory was fair, and insight adequate, without considering the results of administered tests. AR 25, 524-25. The ALJ's third rationale, that plaintiff worked from 2009-2011, is unexplained and apparently irrelevant. This work was performed long before plaintiff's alleged onset date of disability in 2016 and long before Dr. Lyon examined her in 2017. Further, while plaintiff's history of special education indicates she may have had a cognitive impairment during her teenage years, she reported her memory problems began worsening in 2015 and Dr. Lyon specifically referenced her reported increase in symptom severity. AR 520.

The ALJ's fourth rationale, that if plaintiff properly controlled her diabetes she would be able to maintain regular work attendance and not need special/additional supervision, is not well explained; it is unclear how this assertion specifically undermines Dr. Lyon's findings regarding cognitive limitations. Plaintiff argues that she "has a rare form of DM 1 that is volatile and difficult to treat. Even if her diabetes is reasonably treatable, Plaintiff lacks the mental capacity to follow her physicians' instructions on her own." ECF No. 19 at 15. In any case, the ALJ's conclusory assertion cannot support rejection of Dr. Lyon's opinion. Likewise, the ALJ's conclusory statement that the severity of Dr. Lyon's opinion is not supported by the medical evidence of record is insufficient. The ALJ's treatment of Dr. Lyon's opinion is not supported by the record or the opinion itself; this constitutes error.

D. The Court Will Not Order Specific Record Supplementation

Plaintiff argues that the ALJ failed to fully develop the record by failing to order consultative examinations by an endocrinologist to examine plaintiff as to her uncontrolled diabetes, and by a psychiatrist to examine plaintiff as to her anxiety disorder, major depressive

disorder, and cognitive functioning. ECF No. 19 at 18-19. This argument is couched within a section titled "proposed remedy." The only legal argument is that the ALJ has an independent duty to develop the record "to assure that [claimant's] interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, the ALJ's duty to obtain additional evidence is triggered only when the evidence is ambiguous, or the record is inadequate to make a determination as to disability. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); see also 20 C.F.R. §§ 404.1520b, 416.920b. The court is not persuaded by plaintiff's somewhat cursory argument that this is the case here.

### E. The ALJ Erred in Evaluating Plaintiff's Testimony

Plaintiff's argument regarding the ALJ's evaluation of her testimony is brief and dependent on her other arguments regarding development of the record and the ALJ's failure to credit Dr. Lyon. Plaintiff raises two points: that her testimony was supported by Dr. Lyon's opinion, and that her allegations cannot be properly evaluated because the ALJ should have supplemented the record with additional consultative evaluations. EF No. 19 at 18. Because these arguments are derivative and underdeveloped, the court finds no error on these grounds.

### F. Remand for Further Consideration is Appropriate

As discussed, the ALJ erred in rejecting Dr. Lyon's opinion. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error in this matter was harmful; properly considering all the limitations assessed by Dr. Lyon may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability. The court finds remand for further consideration to be the appropriate remedy because the ALJ's analysis was deficient, but the extent to which the various testimony should be credited is for the ALJ to determine in the first instance. Treichler v. Comm'r of Soc. Sec., 775 F.3d 1090, 1099 (9th Cir. 2014) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). The undersigned finds that in this case, additional administrative review would be useful.

////

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 24 is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff and close this case.

SO ORDERED.

DATED: February 17, 2022

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE